**This court**
**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**RICHARD HORTON,**

                    **CASE NO. 2:12-CV-757**
    **Petitioner,**             **JUDGE WATSON**
                    **MAGISTRATE JUDGE ABEL**
    **v.**

**RHONDA RICHARD,  WARDEN,**

    **Respondent.**

**REPORT AND RECOMMENDATION**

Petitioner Richard Horton, a state prisoner, brings this action for a writ of habeas corpus under 28 U.S.C. § 2254.  This matter is before the Magistrate Judge on the Petition, Respondent's Return of Writ, Petitioner's Traverse and the exhibits of the parties.

Petitioner Richard Horton was convicted after a jury trial of aggravated robbery, robbery, kidnapping, and felonious assault with specifications.  He was also convicted of having a weapon while under disability.  The charges arose from an armed man entering the home of Richard McClanahan and Rhonda Curry, shooting McClanahan in the leg, threatening to kill both, and stealing $40.00.  Although the gunman wore a hooded sweatshirt with the hood wrapped tightly around his face, McClanahan and Curry identified Horton as the armed robber. Both testified that they knew him previously and recognized him because of their familiarity with him,  The Ohio Court of Appeals affirmed Petitioner's convictions and sentence on direct appeal, and the Ohio Supreme Court dismissed Petitioner's appeal.  Petitioner also unsuccessfully pursued post conviction relief.  In these habeas corpus proceedings, Petitioner asserts he was denied effective assistance of counsel, denied a fair trial based on unduly unreliable identification testimony, and that his sentence was unconstitutionally imposed.  For the reasons that follow, the Magistrate

1

Judge concludes that none of Petitioner's claims warrant federal habeas corpus relief and therefore **RECOMMENDS** that this action be **DISMISSED.**

**Facts and Procedural History:**

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> According to the evidence of plaintiff-appellee, State of Ohio ("the state"), on October 8, 2004, Richard McClanahan cashed a paycheck. After cashing his paycheck, McClanahan went to a store to buy beer and stopped by a public telephone to place a call. Observing that McClanahan had a pocketful of money, defendant asked McClanahan if he could borrow $20. McClanahan refused defendant's request. McClanahan also refused defendant's request to use the public telephone ahead of McClanahan.

> The next morning, defendant, who had a gun with him, forcibly entered Richard McClanahan and Rhonda Curry's home in Columbus, and demanded money. Upon forcibly entering the home, defendant shot McClanahan in the leg, and struck McClanahan in the head with the gun. In addition, defendant threatened McClanahan and Curry and prevented them from leaving the house. Defendant also kicked McClanahan, dragged McClanahan around the house, and later robbed McClanahan of $40.

> After defendant fled the house, Curry and her sister, who was in another room at the time of the robbery, brought McClanahan to McClanahan's sister's house so that emergency medical personnel and police officers could be summoned. Because McClanahan and Curry did not have a telephone in their house, Curry and her sister were unable to place an emergency call from their home. McClanahan later underwent several surgeries to repair damage to his leg.

> By indictment filed on January 7, 2005, defendant was charged with one count of aggravated burglary with firearm specifications; two counts of aggravated robbery with firearm specifications; four counts of robbery with firearm specifications; two counts of kidnapping with firearm specifications; one count of felonious assault with firearm specifications; and one count of having a weapon while under disability. Defendant pled not guilty to these charges.

2

Claiming that a pre-trial identification was secured by unnecessarily suggestive means thereby depriving him of due process rights under the United States and Ohio Constitutions, defendant moved to suppress identification evidence by the state's witnesses. The trial court denied this motion.

Waiving his right to a jury trial as to the charge of having a weapon under disability, defendant chose to have this charge tried by the court. However, as to the remaining charges, defendant elected to have these charges tried by a jury. During the trial, four counts of robbery were dismissed.

After deliberating, a jury returned verdicts of guilty as to all charges before it. The trial court also found defendant guilty of having a weapon under disability. Finding that defendant's conduct as to the aggravated robbery charges and the kidnapping charges were allied offenses of similar import, the trial court entered no convictions as to the kidnapping charges when the trial court imposed a 23-year prison sentence.

From the trial court's amended judgment, which we construe as a nunc pro tunc judgment, defendant appeals, and the state cross-appeals. See, generally, Crim.R. 36 (providing that clerical mistakes in judgments arising from oversight or omission may be corrected by the court at any time); see, also, State v. Brown (2000), 136 Ohio App.3d 816, 819-820 (discussing function of nunc pro tunc entry).

Since the state filed notice of a cross-appeal, in its responsive brief, the state stated a wish to withdraw its cross-appeal. Although the state has not formally moved to withdraw its cross-appeal, we construe the state's statement seeking withdrawal of its cross-appeal as a motion seeking dismissal of the cross-appeal.

Defendant assigns seven errors for our consideration:

ASSIGNMENT OF ERROR NO. I:

THE REPRESENTATION PROVIDED TO RICHARD HORTON FELL FAR BELOW THE PREVAILING NORMS FOR COUNSEL IN A CRIMINAL CASE, WAS UNREASONABLE, AND AFFECTED THE OUTCOME IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS AS WELL AS ART. I, § 2, 9, 10, AND 16 OF THE OHIO CONSTITUTION.

ASSIGNMENT OF ERROR NO. II:

THE ADMISSION OF DETECTIVE WALKER'S TESTIMONY REGARDING THE PHOTO ARRAY EVIDENCE PROCEDURE AND THE VICTIM'S STATEMENTS IN REGARDS TO THE PHOTO ARRAY PROCEDURE VIOLATED RICHARD HORTON'S RIGHT TO DUE PROCESS, A FAIR TRIAL, AND THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, §§ 2, 10 & 16 OF THE OHIO CONSTITUTION. ITS ADMISSION ALSO VIOLATED THE OHIO EVIDENCE RULES. EVIDENCE RULES. [sic.]

ASSIGNMENT OF ERROR NO. III:

THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE PHOTO ARRAY EVIDENCE BECAUSE IT WAS AN IMPERMISSIBLY SUGGESTIVE IDENTIFICATION THAT LACKED SUFFICIENT INDICIA OF RELIABILITY THEREBY VIOLATING RICHARD HORTON'S RIGHTS AS GUARANTEED BY THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. FEDERAL CONSTITUTION AND ARTICLE I, § 2, 10, AND 16 OF THE OHIO CONSTITUTION.
ASSIGNMENT OF ERROR NO. IV:

A TRIAL COURT MAY NOT SENTENCE A DEFENDANT TO NON-MINIMUM AND CONSECUTIVE SENTENCES WITHOUT VIOLATING A DEFENDANT'S CONSTITUTIONAL RIGHTS AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, § 10 AND 16 OF THE OHIO CONSTITUTION. THE DECISION RENDERED BY THE SUPREME COURT OF OHIO IN STATE V. FOSTER (2006), 109 OHIO ST.3D 1, IS INCOMPATIBLE WITH THE CONTROLLING PRECEDENT OF THE UNITED STATES SUPREME COURT AND MUST BE REJECTED.

ASSIGNMENT OF ERROR NO. V:

THE TRIAL COURT VIOLATED HORTON'S RIGHTS UNDER THE EX POST FACTO CLAUSE OF THE FEDERAL CONSTITUTION BY SENTENCING APPELLANT TO A TERM OF INCARCERATION WHICH EXCEEDED THE

4

MAXIMUM PENALTY AVAILABLE UNDER THE STATUTORY FRAMEWORK AT THE TIME OF THE OFFENSE. THE DECISION RENDERED BY THE SUPREME COURT OF OHIO IN STATE V. FOSTER (2006), 109 OHIO ST.3D 1, WHICH PURPORTS TO AUTHORIZE THE SENTENCE RENDERED AGAINST RICHARD HORTON, IS INCOMPATIBLE WITH THE CONTROLLING PRECEDENT OF THE UNITED STATES SUPREME COURT AND MUST BE REJECTED.

ASSIGNMENT OF ERROR NO. VI:

THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE FEDERAL CONSTITUTION BY SENTENCING APPELLANT PURSUANT TO THE DECISION RENDERED BY THE SUPREME COURT OF OHIO IN STATE V. FOSTER (2006), 109 OHIO ST.3D 1, BECAUSE THE HOLDING OF FOSTER IS INVALID UNDER ROGERS V. TENNESSEE (2001), 532 U.S. 451.

ASSIGNMENT OF ERROR NO. VII

THE RULE OF LENITY REQUIRES THE IMPOSITION OF MINIMUM AND CONCURRENT SENTENCES, AND THE RULING OF THE TRIAL COURT TO THE CONTRARY MUST BE REVERSED.

*State v. Horton*, No. 06AP-311, 2007 WL 2398487, at *1-3 (Ohio App. 10th Dist. Aug. 23, 2007).  On August 23, 2007, the appellate court affirmed the trial court's judgment.  *Id*.  On December 26, 2004, the Ohio Supreme Court dismissed Petitioner's subsequent appeal.  *State v. Horton,* 116 Ohio St.3d 1458 (2007).

Petitioner pursued a petition for post conviction relief in the state trial court.  He asserted that he was denied effective assistance of counsel because his attorney failed to obtain an expert on eyewitness identification; failed to call defense witnesses; failed to object to the photo array; and failed to introduce evidence to impeach Richard McClanahan.  *Exhibits 19, 20 to Return of Writ.*  The trial court held that Petitioner's latter three claims were barred under Ohio's doctrine

5

of *res judicata*.  After a hearing, on April 16, 2010, the trial court denied the remainder of

Petitioner's claims.  *Exhibit 22 to Return of Writ.*  Petitioner filed a timely appeal.  As his sole

assignment of error, Petitioner asserted as follows:

> The trial court erred in dismissing Appellant's petition for post-conviction relief, where Appellant established that his trial counsel's failure to present expert testimony on the subject of eyewitness identification deprived him of his rights to a fair trial, the effective assistance of counsel, and due process of law as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution.

*State v. Horton,* No. 10AP-466, 2011 WL 1049531, at *1 (Ohio App. 10th Dist. March 24, 2011).

On March 24, 2011, the appellate court affirmed the judgment of the trial court.  *Id.*  On August

24, 2011, the Ohio Supreme Court dismissed Petitioner's subsequent appeal.  *State v. Horton*,

129 Ohio St.3d 1452 (2011).

> On July 7, 2011, and then again on July 19, 2011, appellant filed a "Motion for Relief from Judgment" pursuant to Civ.R. 60(B), in which he argued that his indictment was defective under the Supreme Court of Ohio's decision in State v. Colon, 118 Ohio St.3d 26, 2008–Ohio–1624. On August 24, 2011, the trial court filed an entry denying what it mischaracterized as appellant's motion for judicial release filed July 19, 2011.
>
> Appellant appeals the trial court's August 24, 2011 entry and assigns the following errors:
>
> (1). THE TRIAL COURT ERRORED [sic] IN FAILING TO ADDRESS THE GROUNDS FRO [sic] RELIEF. DEPRIVING APPELLANT OF DUE PROCESS OF LAW.
>
> (2). THE TRIAL COURT ERRED IN REFUSING TO GRANT RELIEF FROM THE JUDGMENT OF CONVICTION OR A CHARGE THAT WAS NEVER PROPERLY ALLEGED.

*State v. Horton*, No. 11AP-804, 2012 WL 1622693, at *1 (Ohio App. 10th Dist. May 8, 2012).

Petitioner apparently did not file an appeal to the Ohio Supreme Court.

On August 22, 2012, Petitioner filed this *pro se* petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254. He alleges that he is in the custody of the Respondent in violation

of the Constitution of the United States based upon the following grounds:

> GROUND ONE: PETITIONER WAS DENIED EFFECTIVE
> ASSISTANCE OF COUNSEL AS GUARANTEED BY THE
> SIXTH AND FOURTEENTH AMENDMENTS TO THE
> UNITED STATES CONSTITUTION. PETITIONER'S
> COUNSEL'S PERFORMANCE FELL BELOW OBJECTIVE
> STANDARDS OF PROFESSIONAL COMPETENCE AND THE
> RESULTING PREJUDICE RENDERED THE TRIAL
> CONSTITUTIONALLY INFIRM WHEN COUNSEL FAILED
> TO HIRE AN EXPERT, PRODUCE A REPORT, AND
> PROVIDE EXCULPATORY TESTIMONY FROM SAID
> EXPERT TO THE JURY IN THIS MATTER.
>
> GROUND TWO: PETITIONER'S TWENTY-TWO YEAR
> SENTENCE VIOLATES HIS SIXTH AMENDMENT RIGHT TO
> HAVE THE JURY DECIDE ALL ISSUES OF FACT
> PURSUANT TO THE SUPREME COURT OF THE UNITED
> STATES HOLDING IN *BLAKELY V. WASHINGTON* AND
> *APPRENDI V. NEW JERSEY.*
>
> GROUND THREE: THE UNDULY SUGGESTIVE LINEUP
> LACKS RELIABILITY AND VIOLATES PETITIONER'S
> RIGHTS UNDER THE FEDERAL CONSTITUTION.

It is the position of the Respondent that Petitioner's claims fail to provide a basis for federal

habeas corpus relief. The Magistrate Judge will address Petitioner's claims out of order, for ease

of review.

**Claim Three:**

In claim three, Petitioner asserts he was denied a fair trial based on an unduly suggestive

identification. The state appellate court rejected this claim as follows:

> [D]efendant asserts that the trial court erred under both the United
> States and Ohio Constitutions by failing to suppress a photo array
> that was used to identify defendant because this array was
> impermissibly suggestive and lacked sufficient indicia of
> reliability.

"Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8; *see, also, State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, at ¶ 100, reconsideration denied, 111 Ohio St.3d 1418, 2006-Ohio-5083; *State v. Carrocce*, Franklin App. No. 06AP-101, 2006-Ohio-6376, at ¶ 26 (Brown, J., dissenting). "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Burnside,* at ¶ 8, citing *State v. Mills* (1992), 62 Ohio St.3d 357, 366, rehearing denied, 63 Ohio St.3d 1406, certiorari denied, 505 U.S. 1227, 112 S.Ct. 3048; *see, also, Roberts*, at ¶ 100; *Carrocce,* at ¶ 26. As a consequence, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence," *Burnside*, at ¶ 8, citing *State v. Fanning* (1982), 1 Ohio St.3d 19, and "an appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside,* at ¶ 8, citing *State v. McNamara* (1997), 124 Ohio App.3d 706; *see, also, Roberts*, at ¶ 100; Carrocce, at ¶ 26.

"The due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution prohibit the admission of unreliable identification testimony derived from suggestive identifications procedures." *State v. Brust* (May 28, 2000), Franklin App. No. 99AP-509 (Tyack, J., dissenting in part), dismissed, appeal not allowed, 89 Ohio St.3d 1465, citing *Stovall v. Denno* (1967), 388 U.S. 293, 87 S.Ct. 1967. *See, also, Sorrell v. Thevenir* (1994), 69 Ohio St.3d 415, 422-423, citing *Direct Plumbing Supply Co. v. Dayton* (1941), 138 Ohio St. 540, 544 (stating that the "[t]he 'due course of law' provision [in Section 16, Article I, of the Ohio Constitution] is the equivalent of the 'due process of law' provision in the Fourteenth Amendment to the United States Constitution"); *Peebles v. Clement* (1980), 63 Ohio St.2d 314, 317.

"Before identification testimony is suppressed, the trial court must find that the procedure employed was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." *Brust, supra*, citing *State v. Blackwell* (1984), 16 Ohio App.3d 100, 103, citing *Neil v. Biggers* (1972), 409 U.S. 188, 198, 93 S.Ct. 375; *see, also, State v. Lee*, Franklin App. No. 06AP-226, 2007-Ohio-1594, at ¶ 13; *State v. Smith*, Hamilton App. No. C-010517, 2002-Ohio-2886, at ¶ 14, appeal not allowed, 96 Ohio St.3d 1525, 2002-Ohio-5099.

In *Lee*, this court explained:

* * * The defendant has the burden to show that the identification procedure was unduly suggestive. * * * If the defendant meets that burden, the court must then consider whether the identification, viewed under the totality of the circumstances, is reliable despite its suggestive character. * * * If the pretrial confrontation procedure was not unduly suggestive, any remaining questions as to reliability go to the weight of the identification, not its admissibility, and no further inquiry into the reliability of the identification is required. * * *

*Id.* at ¶ 13 (citations omitted); *see, also, United States v. Hill* (C.A.6, 1992), 967 F.2d 226, 230-231, certiorari denied, 506 U.S. 964, 113 S.Ct. 438.

"Even if the identification procedure utilized is suggestive, as long as the identification itself is otherwise reliable the identification is admissible." *Brust, supra, citing Biggers*, at 199. Furthermore, "even assuming that the procedure used was impermissibly suggestive, '[u]nnecessary suggestiveness alone * * * does not require exclusion of a photographic identification. Rather, the identification process must be so unreliable under the totality of the circumstances as to create a substantial likelihood of irreparable misidentification before the identification will be excluded.' " *Brust, supra*, quoting *State v. Biddings* (Dec. 6, 1990), Franklin App. No. 89AP-822, dismissed by, 59 Ohio St.3d 713. See, also, *State v. Berry* (June 29, 1999), Franklin App. No. 97AP-964, dismissed, appeal not allowed by, 87 Ohio St.3d 1430, and motion for delayed appeal denied by (2000), 88 Ohio St.3d 1436.

In *Brust*, this court stated:

To determine whether, under the totality of the circumstances, an identification was reliable, even though the confrontation procedure was suggestive, the following factors should be considered: "The opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

*Id.,* quoting *Neil*, at 199. *See, also, State v. Davis* (1996), 76 Ohio St.3d 107, 113, reconsideration denied, 76 Ohio St.3d 1479, citing *State v. Waddy* (1992), 63 Ohio St.3d 424, 439, superseded by state

constitutional amendment on other grounds in *State v. Smith* (1997), 80 Ohio St.3d 89, 103, citing *Neil*, at 199-200.

"[N]o due process violation will be found where an identification does not stem from an impermissibly suggestive confrontation, but is instead the result of observations at the time of the crime." *Davis*, at 112, citing *Coleman v. Alabama* (1970), 399 U.S. 1, 5-6, 90 S.Ct. 1999.

Defendant asserts that the photo array was impermissibly suggestive because, except for defendant's photograph, no other photograph in the array portrayed an African-American male of light complexion. Defendant further asserts that the reliability of the identification was questionable because the photo array was submitted to the victims for their review almost two months after defendant allegedly robbed the victims.

"A defendant in a lineup need not be surrounded by people nearly identical in appearance." *Davis*, at 112, citing *New York v. Chipp* (1990), 75 N.Y.2d 327, 336, 553 N.Y.S.2d 72, 77, 552 N.E.2d 608, 613, certiorari denied, 498 U.S. 833, 111 S.Ct. 99. " '[E]ven * * * significant dissimilarities of appearance or dress' will not necessarily deny due process." *Davis,* at 112, citing 1 LaFave & Israel, Criminal Procedure (1984) 587, Section 7.4. *See, also, State v. Murphy* (2001), 91 Ohio St.3d 516, 534, citing *Davis,* at 112, reconsideration denied, 92 Ohio St.3d 1451, certiorari denied (2002), 534 U.S. 1116, 122 S.Ct. 926.

Here, the trial court concluded that the photo array of six African-American males, which was computer-generated based upon parameters, such as race, age, length of hair, and facial hair, and which was separately shown to both victims, was comprised in a totally random manner. (Tr. 16-17; 31.) Although the trial court found some variation among the photographs, (Tr. 32), the trial court concluded that none of the variations was "suggestive." (Tr. 33.) Our review of the array reveals that the five other photographs are all reasonably close to defendant's photograph in appearance, showing no significant variations in hair length, facial hair, age, features, dress, or complexion. Accordingly, we find that the trial court's factual determination is supported by competent, credible evidence. Absent any significant variation in complexion, defendant's claim that a difference in complexion among the photographs was impermissibly suggestive is unconvincing. *See, e.g., Murphy*, at 534; *see, also, State v. Wills* (1997), 120 Ohio App.3d 320, 325, dismissed, appeal not allowed by, 80 Ohio St.3d 1409, quoting *Jarrett v. Headley* (C.A.2, 1986), 802 F.2d 34, 41

(stating that "the test [for suggestiveness] is 'whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the photographs as to suggest to an identifying witness that [that person] was more likely to be the culprit' ").

Also, when a police detective separately and independently showed the photo array to the victims, the detective reviewed a form instructing the victims that the photos were arranged in no particular order of importance; defendant might or might not be included in the photo array; and neither victim was required to select any photo. (Tr. 18-21.) Under such facts and circumstances, we cannot conclude that the procedure used by the police detective was impermissibly suggestive.

Because neither the photo array itself nor the procedure used by the police detective was impermissibly suggestive, for purposes of our review of the trial court's denial of defendant's suppression motion, we need not address defendant's claims that the identification of defendant from the photo array was unreliable. *See Lee,* at ¶ 13, citing *Wills,* at 325; *State v. Beddow* (Mar. 20, 1998), Montgomery App. No. 16197 (stating that "[i]f the pretrial confrontation procedure was not unduly suggestive, any remaining questions as to reliability go to the weight of the identification, not its admissibility, and no further inquiry into the reliability of the identification is required").

Accordingly, for the foregoing reasons, defendant's third assignment of error is overruled.

*State v. Horton,* 2007 WL 2398487, at *3-6.

The factual findings of the state appellate court are presumed to be correct.

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(l). Further, a federal habeas court may not grant relief unless the state

court's decision was contrary to or an unreasonable application of clearly established federal law,

or based on an unreasonable determination of the facts in light of the evidence that was

presented.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "The focus ... is on whether the state court's application of clearly

established federal law is objectively unreasonable.... [A]n unreasonable application is different

from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). To obtain habeas corpus relief, a

petitioner must show that the state court's decision was "so lacking in justification that there was

an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement." *Bobby v. Dixon*, ⸺ U.S. ⸺, 132 S.Ct. 26 (201l) (quoting

*Harrington v. Richter*, 562 U.S. ⸺, 131 S.Ct. 770, 786–87 (2011)). This bar is "difficult to

meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal

justice systems, not a substitute for ordinary error correction through appeal." Harrington v.

Richter, 131 S.Ct at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens,

J., concurring). In short, "[a] state court's determination that a claim lacks merit precludes federal

habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

decision." *Id*. (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Petitioner has failed

to meet this standard.

Petitioner contends that the photo array from which prosecution witnesses Richard McClanahan and Rhonda Lynn Curry identified Petitioner was unduly suggestive, because it contained photographs of individuals with significant differences in hair length, facial hair, age, features, dress, and complexion from that of Petitioner, and because the only individuals with skin color similar to that of Petitioner were contained in the bottom row of the photo array. Petitioner contends that the state appellate court's decision indicating the photo array was not compiled in an unduly suggestive manner constitutes an unreasonable determination of the facts in view of the evidence that was presented.  Petitioner complains that Detective Walker chose which photographs should be included, rather than use a random compilation of photographs obtained from the computer.  He argues that neither Curry nor McClanahan's identification was reliable, because they were unable to obtain an adequate view of the perpetrator, who was wearing a hood.  Additionally, Petitioner asserts that police violated Ohio law by failing to comply with the procedure established by O.R.C. § 2933.08.  *See Petitioner's Reply.*

To the extent Petitioner asserts the alleged violation of state law, such claim fails to provide a basis for federal habeas corpus relief.  A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). " '[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure' " in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th

13

Cir. 1985)). Only where the error resulted in the denial of fundamental fairness will habeas relief

be granted. *Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir. 1988).

That said, due process prohibits identification testimony based upon a pre-trial procedure

that is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable

misidentification." *Thigpen v. Cory,* 804 F.2d 893, 895 (6th Cir. 1986)(quoting *Simmons v.*

*United States*, 390 U.S. 377, 384 (1968)); *see also Stovall v. Denno*, 388 U.S. 293. "It is the

likelihood of misidentification which violates a defendant's right to due process." *Neil v. Biggers*,

409 U.S. at 198. A court must first determine whether the pre-trial identification procedure

employed was unduly suggestive. *Ledbetter v. Edwards*, 35 F.3d 1062, 1070-71 (6th Cir. 1994).

If so, that Court must then consider the totality of the circumstances in order to determine if the

identification is nevertheless reliable. *Id*. at 1070 (citing *United States v. Hill*, 967 F.2d 226, 230

(6th Cir. 1992)); *Neil v. Biggers*, 409 U.S. at 199-200; *Thigpen v. Cory*, 804 F.2d at 895. In

making this determination, the Court must consider the following five factors:

> (1) the opportunity of the witness to view the criminal at the time
> of the crime; (2) the witness's degree of attention at the time of
> observation; (3) the accuracy of the witness's prior description
> of the criminal; (4) the level of certainty demonstrated by the
> witness when confronting the defendant; and (5) the length of
> time between the crime and the confrontation.

*Ledbetter v. Edwards*, 35 F.3d at 1070 (citing *Manson v. Brathwaite*, 432 U.S. at 114; *Neil v.*

*Biggers,* 409 U.S. at 199-200)).

> "To warrant suppression of identification testimony, the accused
> bears the burden of showing [ (1) ] that the identification procedure
> was 'so impermissibly suggestive as to give rise to a very
> substantial likelihood of irreparable misidentification' and [ (2) ]
> that the identification itself was unreliable under the totality of the
> circumstances." *State v. Howard*, No. 2004CA29, 2005 WL
> 1060621, at *2 (Ohio Ct.App. May 6, 2005) (quoting *Simmons v.*
> *United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247

(1968)); see generally *Neil v. Biggers,* 409 U.S. 188, 198–200, 93
S.Ct. 375, 34 L.Ed.2d 401 (1972) (summarizing earlier case law
and providing a clear outline of the two-part test for undue
suggestiveness).

*Howard v. Warden*, 519 Fed.Appx. 360, 363 (6th Cir. March 20, 2013)(unpublished).

Petitioner has attached in support of his claim a photocopy of the photo array used by

police to obtain the identification of Petitioner as the perpetrator.  *See Traverse*.  The Magistrate

Judge has reviewed that document, and is not persuaded that the it was unduly suggestive such as

to warrant disregarding the state court finding of fact and granting federal habeas corpus relief.

Detective Walker obtained the photographs from a computer after inputting the

descriptive information provided to her by the alleged victims.  She used the photographs she

thought were most similar to that of Petitioner.  *Trial Transcript*, PageID #158-59.  Nothing in

the record indicates that Detective Walker, or the police, acted improperly or suggested to the

alleged victims which photograph to choose when obtaining Petitioner's identification as the

perpetrator.  The approximate two month delay between the date of the offense charged and the

date that the alleged victims identified Petitioner from the photo array shown to them by police

was due to McClanahan's hospitalization, several surgeries, and his relocation to another

residence with Curry upon his release from the hospital.  PageID #166.

Moreover, the totality of circumstances reflect the alleged victims' identification of

Petitioner as the armed robber of their home was reliable.  McClanahan and Curry both testified

that the armed robber knocked on the front door, and forcibly entered when McClanahan opened

the door.  *Trial Transcript*, PageID #188, 190.  The gunman hit McClanahan in the head with a

gun and shot him in the leg.  PageID #191.   The gunman told McClanahan, "Get the money.

You just got paid yesterday. . . . Where is your telephone at now, huh?  Where is your telephone

at?"  PageID #192.  He dragged McClanahan around the house, threatened to kill McClanahan and Curry, and rolled Curry up inside of the sofa bed mattress and acted like he was going to shoot her.  PageID #192-93.  McClanahan gave the gunman $40.00, which was all the money he had.  PageId #193.  McClanahan had seen the intruder earlier that day, while he was using the pay telephone after cashing his paycheck at Bob's Market.  PageID #196-97.  The man had asked to borrow $20.00 from McClanahan. McClanahan refused.  PageID #197-98.  Eight to ten years earlier the gunman had purchased the car of McClanahan's niece.  McClanahan repaired the brakes.  PageID #198-199.  McClanahan told Detective Walker he knew the man who robbed his home and shot him, and gave her his first name.  McClanahan later called the detective and gave her Petitioner's last name.  PageID #202.  The gunman was wearing the same clothes (a grey hooded sweatshirt and jeans) when he robbed McClanahan as he had been wearing earlier when he tried to borrow money from McClanahan.   PageID #200.  McClanahan identified Petitioner's picture from a photo array in December, approximately two months after the robbery.  He was one hundred percent sure of his identification of Petitioner.  PageID #204, 207.  He had no doubt.  PageID #210.  He was able to observe the gunman's eyes and eyebrows, and could recognize his voice.[1]  PageID #210.  McClanahan also knew the perpetrator from the neighborhood and knew him by name.  PageID #218.

Rhonda Curry watched the events described by McClanahan.  She had a good opportunity to observe the armed robber of her home.  PageID #229.[2]  She also recognized the perpetrator as Richard who had gone to school with her daughter.  PageID #233-34.  She also identified Petitioner as the perpetrator in December from a photo array shown to her by police.  PageID #234-35.  She was not with McClanahan when she identified Petitioner's photograph,

---

[1]  McClanahan told police the gunman wore a gray hooded sweat shirt with the hood tied up tightly around his face. He described the man as a male, light skinned, six feet tall with bushy eyebrows and short hair.  PageID #169.
[2] The robbery apparently lasted approximately 15 to 25 minutes.  *See State v. Horton*, 2011 WL 1049531, at *1-7.

and was not informed of which picture he had chosen.  PageID #235.  She was "110 percent"

certain of her identification of Petitioner as the man who entered her home and shot

McClanahan.  PageID #237.  Police did nothing to influence her identification of him.  PageID

#238.  She had no doubt.  *Id*.

Although the armed robbery wore a sweatshirt with the hood wrapped tightly around his

face, the record nonetheless fails to reflect that the alleged victims were unable to see enough of

his facial features to identify him from the photo line up.  Additionally, both of the alleged

victims were able to recognize Petitioner as the armed gunman from their previous encounters

with him.

Claim three is without merit.

**Claim One:**

In claim one, Petitioner asserts he was denied effective assistance of counsel because his

attorney failed to hire an expert to testify on his behalf regarding the unreliability of eyewitness

identification testimony.  The state appellate court rejected this claim in relevant part as follows:

> An eleven-count indictment filed January 7, 2005 charged
> defendant with aggravated burglary, felonious assault, having a
> weapon under disability, and multiple counts of aggravated
> robbery, robbery and kidnapping, most with specifications.
> Because some of the evidence underlying defendant's convictions
> is pertinent to his current appeal, we address it in some detail.
>
> After cashing his paycheck at a convenience store on October 8,
> 2004, Richard McClanahan went to a corner store near his house to
> buy beer and to use the pay phone. McClanahan had to pull the
> cash received from cashing his paycheck, about $400 to $500, to
> get to his change to make the phone call. Defendant saw
> McClanahan at the pay phone and, seeing the cash McClanahan
> had in his hand, asked McClanahan to lend him $20; McClanahan
> refused. Defendant commented that McClanahan appeared to have
> just been paid, and McClanahan admitted he had.

McClanahan knew defendant because McClanahan's niece sold defendant a car several years earlier, McClanahan put brakes on the car, and he met defendant during the transaction. McClanahan also had seen defendant around the neighborhood, about 20 to 30 times, in the previous several years.

Defendant then asked to use the telephone before McClanahan did, but McClanahan refused, advising he had to make an important call. After completing the call, McClanahan returned home to spend the evening with his girlfriend, Rhonda Curry, and her sister at the residence McClanahan and Curry shared.

The next morning, an intruder forced his way into the McClanahan–Curry residence, held a gun to McClanahan's head, shot him in the leg, threatened to kill Curry, demanded money, and eventually left the residence with $40. While he was in the hospital, McClanahan told Detective Brenda Walker a man named "Richard" shot and robbed him. McClanahan explained he knew defendant from the car sale and would provide Detective Walker with the man's last name when McClanahan got out of the hospital. When police later separately showed Curry and McClanahan a photo array of possible defendants, both immediately identified defendant and said they were 100 percent certain he was the perpetrator.

On February 3, 2006 the Franklin County Court of Common Pleas found defendant guilty, pursuant to jury verdict, of aggravated burglary, two counts of aggravated robbery, two counts of kidnapping, and felonious assault, all with firearm specifications. Pursuant to jury waiver, the court found defendant guilty of possessing a weapon while under disability. The court sentenced defendant to a total of 23 years. Defendant filed a direct appeal of his conviction, raising seven assignments of error. On August 30, 2007, we overruled all of defendant's assignments of error and affirmed the judgment of the trial court. State v. Horton, 10th Dist. No. 06AP–311, 2007–Ohio–4309.

On January 2, 2007, during the pendency of the direct appeal, defendant filed a petition, and later an amended petition, to vacate or set aside his convictions pursuant to R.C. 2953.21. Although defendant's petition raised four claims for relief, the trial court determined only the first claim was properly raised in a post-conviction petition, as *res judicata* barred the other three. Defendant's first claim for relief asserted his trial counsel was ineffective for failing to obtain or present an expert witness on the topic of eyewitness identification. On February 2, 2007, the state

filed an answer to the petition, disputing all of defendant's claims of ineffective assistance of counsel but acknowledging an evidentiary hearing was appropriate.

During the August 27 hearing on his petition, defendant presented the testimony of Dr. John L. Tilley. A forensic psychologist who received training in eyewitness identification in graduate school and in post-doctorate continuing education courses, Dr. Tilley also taught forensic psychology at Capital University. Based on Dr. Tilley's qualifications as a forensic psychologist, the court allowed him to testify as an expert. Both parties questioned Dr. Tilley concerning the eyewitness identification testimony he would have presented to the jury had he been called in defendant's trial.

On April 16, 2010, the trial court filed a Decision and Entry Denying Motion of Defendant for Post–Conviction Relief. The court noted the relevant portions of Dr. Tilley's testimony at the evidentiary hearing and concluded "[t]he fact that trial counsel did not call an expert to challenge the reliability of eyewitness identification [did] not demonstrate ineffective assistance of counsel," as the decision not to call such an expert was a result of trial strategy. (Decision, 5.) Accordingly, the trial court did not deem defense counsel deficient in not calling an expert on eyewitness identification. Nor did the court feel the decision had any effect on the fairness of the trial defendant received. Rather, the court concluded Dr. Tilley's testimony created "just as many questions as it may have answered, if not more." (Decision 6.)

II. Ineffective Assistance of Counsel–Failure to Call Eyewitness Expert

Defendant's single assignment of error asserts his trial counsel's performance was deficient in failing to present the testimony of an expert witness on eyewitness identification, as the decision was not a matter of trial strategy. Moreover, because Curry's and McClanahan's identifications were the sole evidence linking defendant to the crimes, defendant contends his counsel's failure to call an expert on eyewitness identification prejudiced him.

The post-conviction relief process is a collateral civil attack on a criminal judgment, not an appeal of the judgment. *State v. Steffen* (1994), 70 Ohio St.3d 399, 410, 639 N.E.2d 67. "It is a means to reach constitutional issues which would otherwise be impossible to reach because the evidence supporting those issues is not contained" in the trial court record. *State v. Murphy* (Dec. 26, 2000), 10th Dist. No. 00AP–233, discretionary appeal not allowed

19

(2001), 92 Ohio St.3d 1441. Post-conviction review is not a constitutional right but, rather, a narrow remedy that affords a petitioner no rights beyond those the statute grants. *State v. Calhoun* (1999), 86 Ohio St.3d 279, 281, 282, 714 N.E.2d 905. Nor does it provide a petitioner a second opportunity to litigate his or her conviction. *State v. Hessler*, 10th Dist. No. 01AP–1011, 2002–Ohio–3321, ¶ 32; *Murphy.*

"[A] trial court's decision granting or denying a postconviction petition filed pursuant to R.C. 2953.21 should be upheld absent an abuse of discretion; a reviewing court should not overrule the trial court's finding on a petition for postconviction relief that is supported by competent and credible evidence." *State v. Gondor*, 112 Ohio St.3d 377, 860 N.E.2d 77, 2006–Ohio–6679, ¶ 58; *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (noting "[t]he term 'abuse of discretion' connotes more than an error of law or of judgment" and "implies that the court's attitude is unreasonable, arbitrary or unconscionable").

To prevail on his claim of ineffective assistance of counsel, defendant was required to demonstrate (1) defense counsel's performance was so deficient he or she was not functioning as the counsel guaranteed under the Sixth Amendment to the United States Constitution, and (2) defense counsel's errors prejudiced defendant, depriving him or her of a trial whose result is reliable. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus, cert. denied (1990), 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 768; Calhoun at 289, 714 N.E.2d 905 (noting the petitioner for post-conviction relief has the burden of demonstrating counsel's ineffectiveness, "since in Ohio a properly licensed attorney is presumably competent").

An attorney's performance is deficient if it falls below an objective standard of reasonable representation. A defendant can show prejudice resulting from the deficient performance only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bradley* at 142, 538 N.E.2d 373, quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Unless defendant made both showings, he failed to demonstrate his convictions resulted from a breakdown in the adversary process that renders the result unreliable. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

A.  Counsel's Performance Not Deficient

"Judicial scrutiny of counsel's performance must be highly deferential,* * * [and] a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, * * * the challenged action 'might be considered sound trial strategy.'" *Id*. 466 U.S. at 689, 104 S.Ct. at 2065*; Bradley* at 141, 538 N.E.2d 373. "Generally, 'the decision to forgo an eyewitness-identification expert is a recognized trial strategy.'" *State v. Mayrides*, 10th Dist. No. 03AP–347, 2004–Ohio–1623, ¶ 25, discretionary appeal not allowed, 103 Ohio St.3d 1426, 814 N.E.2d 489, 2004–Ohio–4524, quoting *State v. Keeling*, 1st Dist. No. C–010610, 2002–Ohio–3299, ¶ 8; *see also State v. Fisk,* 9th Dist. No. 21196, 2003–Ohio–3149, ¶ 9, discretionary appeal not allowed, 124 Ohio St.3d 1478, 2010–Ohio–354 (observing "an attorney's decision not to request * * * appointment of an expert witness to testify on a particular issue [is a] matter[ ] of trial strategy"); *State v. Samatar*, 152 Ohio App.3d 311, 787 N.E.2d 691, 2003–Ohio–1639, ¶ 90, citing *State v. Phillips* (1995), 74 Ohio St.3d 72, 85, 656 N.E.2d 643; *State v. Williams* (1991), 74 Ohio App.3d 686, 694, 600 N.E.2d 298 (stating "[d]ebatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if a better strategy had been available," as the "decision of whether to call a witness is generally a matter of trial strategy").

Defendant contends *Mayrides* does not apply here, because the trial court in *Mayrides* did not hold an evidentiary hearing on the petition for post-conviction relief and determined *Mayrides* should have raised the issue of identification in the direct appeal. Although *Mayrides* determined the issue concerning the photographic array should have been raised on direct appeal, it addressed the issue of expert testimony on eyewitness identification and concluded *Mayrides* did not demonstrate his attorney "had no objectively reasonable basis for failing to retain an eyewitness-identification expert." *Id*. at ¶ 26, 600 N.E.2d 298. *Mayrides* further noted that, not only did counsel "thoroughly cross-examine[ ] the witnesses regarding their identification of appellant," but *Mayrides* did not demonstrate that the failure to retain an expert resulted in prejudice. Id.; *see Samatar* at ¶ 90 citing *State v. Hartman*, 93 Ohio St.3d 274, 299, 754 N.E.2d 1150, 2001–Ohio–1580 (observing "the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel").

Here, contrary to defendant's contentions, his trial counsel thoroughly cross-examined the victims on their ability to view the intruder. In cross-examining McClanahan, defense counsel asked if

21

he saw the intruder's face, causing McClanahan to state the man "had a hood drawn all the way up" which allowed McClanahan to see only the perpetrator's eyes and eyebrows. (Tr. 69–70.) Similarly, defense counsel's cross-examination of Curry caused her to state that, even though she saw none of the perpetrator's face except his eyes, she nonetheless was "a hundred percent sure it was him." (Tr. 98.)

In closing argument, defense counsel employed those facts, telling the jurors that if they could "determine that a reliable identification can be made beyond a reasonable doubt of a suspect whose face [was] covered by the hood of a sweat shirt except for his eyes, if you determine that is a positive identification, * * * you must live with that determination." (Tr. 301.) Counsel reminded the jury no fingerprints, DNA evidence, or gun connected defendant to the crime, making the state's case "strictly an I.D. case of a man who has his face covered with a sweat shirt and only his eyes showing." (Tr. 303.)

Since the decision to call an expert witness falls under the ambit of counsel's trial strategy, defendant's attorney cross-examined the witnesses on each one's ability to see defendant, and counsel argued the problems inherent in their identifications in his closing argument, we cannot say defense counsel's decision not to call an expert on eyewitness identification fell below an objective standard of reasonable representation. *State v. Sallie*, 81 Ohio St.3d 673, 675, 693 N.E.2d 267, 1998–Ohio–343, *citing State v. Thompson* (1987), 33 Ohio St.3d 1, 10, 514 N.E.2d 407 (stating "trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance," including the decision to present expert testimony).

Defendant nonetheless claims his attorney's decision not to call an expert witness was not trial strategy, because counsel did not discuss with him the possibility of retaining an expert to testify about eyewitness identification issues. (Aug. 27, 2008 Tr. 97.) Defendant, however, points to no authority indicating an attorney's failure to discuss with his or her client whether to call an expert witness removes the decision from the ambit of trial strategy. Cf. Prof.Con.R. 1.4(a)(2) (stating that in communication between a lawyer and client, the lawyer should " reasonably consult with the client about the means by which the client's objectives are to be accomplished"). Whatever the ethical considerations may be if counsel did not discuss the matter with defendant, the decision, in the circumstances of this case, remains one of trial strategy.

22

The trial court did not err in concluding counsel's failure to call an expert to testify regarding eyewitness identification was a tactical decision that did not fall below an objective level of reasonable representation.

B.  Counsel's Performance did not Prejudice Defendant

Had the expert defendant presented at the evidentiary hearing on his petition for post-conviction relief testified at trial, the witness would have been permitted to testify generally as to "the variables or factors that may impair the accuracy" of typical eyewitness identification. *State v. Buell* (1986), 22 Ohio St.3d 124, 489 N.E.2d 795, paragraph one of the syllabus, cert. denied, *Buell v. Ohio* (1986), 479 U.S. 871, 107 S.Ct. 240, 93 L.Ed.2d 165. The expert would not have been allowed to testify "regarding the credibility of the identification testimony of a particular witness * * *, absent a showing that the witness suffers from a mental or physical impairment which would affect the witness' ability to observe or recall events." *Id.* at paragraph two of the syllabus.

Dr. Tilley identified four areas about which he would have testified: (1) the general unreliability of eyewitness identification, (2) how eyewitness competency is unrelated to eyewitness accuracy, (3) the possibility of "transference of memory," and (4) issues pertaining to photo arrays. (Tr. 55–56.) Although the witness stated "research indicates that eyewitness testimony is to a certain extent inherently unreliable," he testified eyewitness identification can be good and "[t]here are plenty of cases in which it was reliable." (Tr. 57, 82.)

Concerning the first two areas, Dr. Tilley stated "witnesses tend to be overly confident in their reports," so "[a]n individual making a misidentification is just as confident in their choice as a person making a correct identification." (Tr. 59–60.) The witness opined "confidence inflation" occurred here, noting McClanahan initially could remember only defendant's first name, but later said he was 100 percent certain of the suspect's identity. (Tr. 61.)

Apart from whether Dr. Tilley's specific testimony regarding McClanahan would have been admissible, the trial court pointed out the flaw in the witness' logic because McClanahan, while at the hospital, identified the man who shot him as "Richard," the person to whom his niece had sold a car several years back. McClanahan offered he could retrieve the last name for the detective once he was out of the hospital. (Tr. 83–84.) As the trial court observed, the witness obviously knew the man he was trying to identify, and

McClanahan's inability to remember the last name was a "ludicrous" basis on which to say McClanahan initially was not confident in identifying defendant. (Tr. 84.)

The third point of Dr. Tilley's testimony addressed memory transference, which occurs where "an individual believes they're recalling someone from a particular situation, when in essence they are actually recalling them from a different situation." (Tr. 63.) According to Dr. Tilley, the individual's memory confuses the two events because they are similar in nature. Dr. Tilley stated factors influencing memory transference include a "high degree of stress" that occurred with respect to the event. (Tr. 64.) He also included factors such as whether "the crime or situation occurred briefly, if there was relatively little time, or a good viewpoint from which to make an identification, and also that there be some moderate to minimal familiarity with the individual." (Tr. 64.) Although Dr. Tilley testified being shot would be the high stress type of situation that would lead to memory transference, he also admitted some studies indicated a high degree of stress actually increases the likelihood a witness will correctly identify a suspect.

The doctor also admitted that the longer a person spends with the suspect, the more likely the identification will be good. (Tr. 87.) Here, the robbery lasted between 15 and 25 minutes, so it was not a brief encounter that would increase the likeliness of memory transference. (Tr. 99.) Dr. Tilley also agreed the closer the witness was to the perpetrator and the greater the lighting in the area, the more likely the witness made an accurate identification. (Tr. 88.) Here, the robbery occurred in the morning, and the two victims and the robber were all confined to the front room of the house, leaving little distance between the victims and the perpetrator. (Tr. 46, 50.)

As to the fourth point of his testimony concerning the photo array, Dr. Tilley testified "misidentification tends to increase when, as here, photo line-ups are presented simultaneously" because, even if the culprit's picture is not in the array, the witness is inclined to pick the person whose appearance is closest to the culprit. (Tr. 71–72.) Dr. Tilley, however, admitted he had limited experience in working with crime victim eyewitness identifications. He further acknowledged college students conducted most of the studies he cited, and a "college student taking part in an event may have a different perspective than a crime victim testifying under oath with respect to an event." (Tr. 87.)

As a result, Dr. Tilley's testimony on the factors or variables that may have influenced McClanahan's and Curry's identifications

demonstrated potential problems in the identifications but also highlighted factors demonstrating the potential strengths of their identifications. Indeed, various aspects of Dr. Tilley's testimony may have been as helpful to the state as to defendant.

In the final analysis, mistaken identity was highly unlikely because the victims and defendant knew each other. *See State v. Crosby*, 186 Ohio App.3d 453, 928 N.E.2d 795, 2010–Ohio–1584, ¶ 2–3, 30, 41, appeal not allowed, 126 Ohio St.3d 1549, 2010–Ohio–3855 (noting expert testimony on eyewitness identification may have confused the jury where mistaken identity was unlikely because the victim and defendant knew each other and, when the victim came out of a coma, he immediately identified the defendant as the gunman). Dr. Tilley admitted a witness will more easily identify someone he or she knows than a stranger, and the longer the witness has known someone, the more easily he or she will identify them. (Tr. 91–92.) The victims here met defendant several years before the incident, and both testified they were familiar with defendant from seeing him around the neighborhood. (Tr. 55, 73, 99, 100–01.) Indeed, defendant testified he would readily recognize McClanahan or Curry, suggesting the reverse also would be true. The testimony supports that conclusion, as Curry and McClanahan arrived at the determination that defendant was the perpetrator independent from one another.

Finally, other factors beyond eyewitness identification connected defendant to the crime. McClanahan testified that during the robbery the perpetrator said, "You just got paid yesterday. Get that god damn money." McClanahan told him he did not have the money, and the intruder retorted, "You got [sic] damn lie, you know where that money at. * * * Where is your telephone now, huh? Where is your telephone at?" (Tr. 49.) The perpetrator thus referred during the robbery to the previous day's comments about McClanahan's money and the pay phone, and he even used some of the same words the men exchanged the prior day.

McClanahan also testified that, apart from physical features, he was able to identify defendant on the sound of his voice, which he recognized from the previous day's encounter with defendant. (Tr. 59, 70.) McClanahan further noted the perpetrator wore the same clothes defendant wore the day before at the phone booth. (Tr. 57.) As a result, the robber's voice, clothes, and words, compared to defendant's voice, clothes, and words from the day before at the phone booth, demonstrate that even if defense counsel called an expert witness to testify on eyewitness identification, the jury's verdict would have been the same. The trial court did not err in

> determining defendant suffered no prejudice from his attorney's decision not to call an expert to testify to eyewitness identification.
>
> Accordingly, we overrule defendant's sole assignment of error and affirm the trial court's denial of defendant's petition for post-conviction relief.

*State v. Horton*, 2011 WL 1049531, at *1-7.

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687 (1984). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

To establish prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 697. Because Petitioner must satisfy both prongs of the Strickland test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Strickland*, 466 U.S. at 697.

Petitioner argues that the state appellate court unreasonably concluded, in view of the facts, that counsel's decision not to call an expert on identification testimony was strategic. Petitioner complains that the state appellate court failed adequately to address counsel's lack of investigation, his filing of a "boilerplate" motion to suppress identification testimony, and his failure to discuss the decision regarding whether to obtain an expert on eyewitness identification with Petitioner prior to trial.  In support of his argument that defense counsel improperly failed to investigate prior to reaching reasonable strategic decisions prior to trial, Petitioner argues that McClanahan lied when he testified he had not met with Petitioner prior to trial, and defense counsel failed to cross examine him on this issue.[3]

The Magistrate Judge is not persuaded that either the filing of a "boilerplate" motion to suppress or counsel's cross-examination of McClanahan reveal an improper failure to investigate by defense counsel, particularly in regard to counsel's decision not to call an expert in witness identification.  Neither the transcript of the hearing on the motion to suppress evidence, nor the trial transcript reflect that defense counsel was unprepared or performed in a constitutionally ineffective manner in cross examination of prosecution witnesses.  Defense counsel cross examined McClanahan on his failure to obtain a taped recording of Petitioner's "so-called" offer to pay him $3,000.00 for telling police and the fact that the man who entered McClanahan's home had his "hood drawn all the way up" such that McClanahan was unable to obtain a good view of the robber's entire face.  *Trial Transcript*, PageID #212-13.

---

[3]  In support of this argument, Petitioner refers to an affidavit of his cousin, LaKeon Horton, in which LaKeon indicates that during the summer of 2005, he was in a car with Petitioner when McClanahan stopped to talk with Petitioner, and thereafter met them at Petitioner's house.  According to LaKeon, McClanahan told Petitioner he would tell police Petitioner was not the armed robber if Petitioner paid him.  Petitioner refused.  *Affidavit of LaKeon Horton, see Exhibit 19 to Return of Writ,* PageID #981-82.

McClanahan, however, testified that after he was robbed, he saw Petitioner at a gas station.  Petitioner denied being the perpetrator of the offense, and offered to pay McClanahan $3,000.00 if McClanahan would tell police they had the wrong man.  *Trial Transcript,* PageID #208.  McClanahan refused and told police about the incident.  PageID #208-209.  On cross-examination, McClanahan denied meeting Petitioner at his home.  PageID #211.

"With regard to the failure to call an expert on eyewitness testimony, federal courts have held that a defense attorney's cross examination of eyewitnesses is a sufficient method of attempting to deal with the issues presented by eyewitness testimony." *See Parker v. Curtin*, No. 09-cv-13329, 2010 WL 4940011, at *4 (E.D. Mich. Nov. 30, 2011)(citing *Davenport v. Curtis,* 2008 WL 4534198, at *3 (E.D. Mich.); *Madrigal v. Bagley*, 276 F.Supp. 744. 791–92 (N.D. Ohio 2003), *Forensic v. Birkett*, 501 F.3d 469, 483–84 (6th Cir. 2007); *Tipton v. United States*, No. 96–5026, 1996 WL 549802 at *1–2 (6th Cir. 1996)). " 'No precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment.'" *White v. Smith*, No. 1:10-cv-23, 2011 WL 9688085, at *10 (N.D. Ohio Nov. 16, 2011)(quoting *Perkins v. McKee*, 411 Fed.Appx. 822, 833 (6th Cir. 2011); see also *Dorch v. Smith*, 105 Fed. Appx. 650, 653 (6th Cir. 2004)(failure to call expert witness on eyewitness identification did not constitute constitutionally ineffective assistance of counsel where counsel presented alibi witnesses and cross examined identifying witnesses); *Tipton v. United States*, No. 96–5026, 1996 WL 549802, at *1–2 (6th Cir. Sept.1996)(no prejudice under *Strickland* from failure to hire expert in eyewitness identification).

For the reasons well detailed in the decision of the Ohio Court of Appeals, the Magistrate Judge likewise agrees that Petitioner has failed to establish he was denied effective assistance of counsel based on his attorney's failure to present testimony on an expert regarding eyewitness identification.  This claim fails to provide a basis for federal habeas corpus relief.

Claim one is without merit.

**Claim Two:**

In claim here, Petitioner asserts that his sentence violated *Blakely v. Washington*, 542 U.S. 296 (2004). Specifically, Petitioner contends that the trial court improperly used Petitioner's prior criminal record as a basis for imposing an increased sentence, and that the rule of lenity warranted a lesser sentence. *See Traverse*. Petitioner did not raise these precise arguments in the Ohio Court of Appeals. Rather, he argued that the Ohio Supreme Court's decision in *Foster* was unconstitutional, and that application of *Foster* violated the Ex Post Facto Clause. Therefore, it appears that claim three is procedurally defaulted. Respondent did not raise this argument, however, and the Magistrate Judge will therefore address the merits of Petitioner's claim.[4]

Petitioner's assertion that his sentence violated the "rule of lenity," fails to present an issue of constitutional dimension that is appropriate for federal habeas corpus relief. "[T]he rule of lenity is merely a canon of statutory interpretation" and nothing in the Constitution requires the state courts to apply this rule in interpreting state statutes. *See Featherkile v. Warden*, No. 1:07–cv–01023, 2010 WL 546118, at *15–16 (S.D. Ohio Feb.12, 2010) (citations omitted). "'Application of the rule of lenity ensures that criminal statutes will provide fair warning'" regarding illegal conduct. *Lurie v. Wittner*, 228 F.3d 113, 126 (2nd Cir.2000) (quoting *Liparota v. United States*, 471 U.S. 419, 427 (1985)). Here, Petitioner does not contend, and the record does not reflect, that the statutes under which he was convicted and sentenced was either unconstitutionally vague or otherwise failed to provide him fair notice at the time of his

---

[4] As a general rule, procedural default is an affirmative defense that must be raised by the state at the first possible opportunity, or it will be waived. *Trest v. Cain*, 522 U.S. 87, 89 (1997) (State's failure to raise procedural default normally constitutes waiver of the default); *Gray v. Netherland*, 518 U.S. 152, 166 (1996) (procedural default is normally an affirmative defense that will be waived if not raised).

conviction. *See id*. (citing *Poole v. Wood*, 45 F.3d 246, 249 (8th Cir.1995); *Sabetti v. Dipaolo*, 16 F.3d 16, 19 (1st Cir.1994)). Both before and after *Foster*, Petitioner had warning of the penalties he faced as well as the trial court's discretion to impose these penalties. Thus, the "rule of lenity" fails to provide him relief.

As to Petitioner's contention that his sentence violates *Blakely* because the trial court considered his prior criminal record in imposing sentence, this claim likewise fails. A sentencing court does not violate *Blakely* by considering a criminal defendant's prior record when imposing sentence. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Blakely v. Washington,* 542 U.S. at 301 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

Claim two is without merit.

**WHEREUPON**, the Magistrate Judge **RECOMMENDS t**hat this action be **DISMISSED.**

**Procedure on Objections:**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further

evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

s/Mark R. Abel
United States Magistrate Judge